IN

# THE SUPREME COURT

OF

## PENNSYLVANIA.

NORTHERN DISTRICT—SUNBURY, 1853.

### Coxe *versus* Sartwell.

1. Where a purchaser at treasurer's sale of land sold for taxes, upon claim of a right to redeem, conveys or assigns the legal title to the claimant, on receiving the amount of the redemption-money, the transaction is a *redemption;* the assignment or conveyance passes no title, and the assignee or grantee has none to convey to another person.

2. Notice to a grantee of the purchaser, or to one claiming under such grantee, that the land has been redeemed, is not necessary in any case.

3. A redemption having been effected by one partner in the transaction with money furnished by the other, it was *Held,* that the latter was to be affected with notice of the acts of the party redeeming in effecting the arrangement.

4. The admission in the body of a deed of the payment of the consideration, or the receipt at the foot of it, is sufficient to give effect to the deed as against *the vendor;* but it is not evidence to extinguish the title of a third person on the ground that the vendee is a purchaser without notice of such third person's right. To constitute the party a purchaser without notice, he must prove, independently of the receipt on the deed, the payment of the consideration before he had notice of the plaintiff's equity.

5. Though no one but the owner or party interested has a right to redeem against the will of the purchaser, yet if the latter accepts the redemption-money, the sale is avoided and the redemption enures to the benefit of the rightful owner. See also Orr *v.* Cunningham, 4 *W. & Ser.* 294.

ERROR to the Common Pleas of *McKean county.*

This was an action of ejectment to May Term, 1848, by Richard S. Coxe *v. Solomon* Sartwell, to recover three tracts of land, the

(480)

[Coxe v. Sartwell.]

warrants for which were numbered 2520, 4962, and 4968. It was testified on the trial that the two tracts first above named, had been sold for taxes of 1848–49, and purchased by *George W. Sartwell.* The deeds by the treasurer to him were acknowledged *on October 15, 1850.* The Court charged that this purchase showed an outstanding title in the said *George W. Sartwell* to the said two tracts, and the attention of the jury was limited to the title to the other tract, numbered 4968.

This tract had belonged to the Holland Land Company by warrant from the Commonwealth, and the title to it passed by various conveyances *to the plaintiff.* It was sold for taxes of 1842 and 1843, and by deed-poll, dated 30th September, 1844, was conveyed by the treasurer to *William S. Oviatt* for $24.37.

It appeared to have been again sold in 1846, for taxes of 1844 and 1845, and was conveyed by deed of the county treasurer, dated in December 1846, to *Elias J. Cooke.*

Wm. S. Oviatt, the first purchaser, by deed dated September 30, 1846, conveyed No. 4968 to Z. C. Cowley; and Cowley by deed, dated December 31, 1846, conveyed to *Solomon* Sartwell, the defendant.

E. J. Cooke, by deed, dated August 28, 1848, conveyed to Solomon Sartwell, *the defendant,* and Charles Steele.

The Court below charged that the title to this tract, No. 4968, was vested *in the defendant* by the assignment by Oviatt to Cowley of 30th September, 1846, and of Cowley to Sartwell, defendant, of December 31, 1846, and by the assignment of Cook to defendant and Steele of August 28, 1848, unless in consequence of Sartwell's connection with *Brewster Freeman,* he held as a trustee *for the plaintiff.*

As to his connection with Freeman. On the part of the plaintiff there was given in evidence a written agreement, dated 18th October, 1842, between Richard S. Coxe, the plaintiff in this suit, and Brewster Freeman, by which Coxe agreed to convey to Freeman a number of tracts of land in McKean county, exceeding 7000 acres, at 50 cents per acre, tract No. 4968, stated as containing 978 acres, being included. The payments were to be made in four equal annual instalments, and Freeman was to execute a mortgage of the premises sold. It was further agreed by Freeman, that he would pay *the taxes on the said lands,* and if the purchase-money be not paid as agreed, that he would re-convey the lands not paid for.

There was further given in evidence on part of plaintiff, an agreement in writing, dated 25th January, 1847, between Solomon Sartwell, C. Steele, and Brewster Freeman, in which it was stated, that by an agreement between Freeman and Sartwell made "sometime since," it was agreed that Freeman was to furnish to Sart-

well five warrants of land in Shippen township, McKean county, No. 4968 being one of them. It was stated to be understood, that Sartwell and Steele were to take the lands and pay Freeman *one-half of what they have cost him, including all taxes and costs* till that time; the half stated to be $188.82. Sartwell and Steele were to sell the lands and pay to Freeman the one-half of the net proceeds, &c.

It was agreed that Sartwell and Steele were not to sell the lands under sixty cents per acre without consulting Freeman, and that the amount already paid to Oviatt and for taxes, amounting to about $150, is " to apply to Freeman as part of the $188.82."

*W. S. Oviatt* testified that he bought *the three tracts*, Nos. 2520, 4962, 4968, on 30th September, 1844. That he received from *Z. C. Cowley* the amount of redemption for these tracts; and supposed he made a conveyance to him of his interest. He said that *Brewster Freeman made the arrangement for the redemption previously*,—and that he exhibited a contract with R. S. Coxe for these lands, to show his right to redeem, &c. He said that he received *the amount he paid and 25 per cent.*

*E. J. Cook* testified that he bought Nos. 2520 and 4968 in 1846 at treasurer's sale. That in December, 1846, Steele spoke to him *about redeeming*. He had no recollection that Sartwell called on him. That Steele paid the money, and he transferred to Steele & Sartwell. He did not recollect of Freeman's calling with Steele. He further said that Steele *claimed the right to redeem, and that he and Sartwell were the owners*. That he executed a deed, and that the consideration of it was *the amount of his bid and 25 per cent.* That Steele said he preferred having his deed rather than to redeem. That he asked him to transfer his deed.

There was also given in evidence the assignments of Oviatt to Cowley, dated September 20, 1846, of *the three tracts*, including No. 4968.

Also deed of Cowley to Sartwell for the same three tracts, the consideration stated to be $110.

Also; assignment E. J. Cooke to Steele & Sartwell, dated Feb. 28, 1848, of No. 4968, consideration $30.55. Also; assignment of same to same of No. 2520, consideration $30.84.

On the part of the defendant, Brewster Freeman was examined, and, *inter alia*, testified that his recollection was that all the negotiations with Sartwell took place after the time for redemption had expired as to the sales made in 1844. On cross-examination, he said that he made the arrangement with Sartwell, just before Cowley transferred to him; (the date of that transfer was 31st December, 1846), that it was about that time he had the first conversation with Sartwell.

He had previously said, when examined on the part of the

[Coxe v. Sartwell.]

plaintiff, that he was directly interested in the whole matter in controversy in the suit.

On part of the plaintiff points were submitted:

1. That the plaintiff has shown a perfect title to the land for which this suit is brought, from the Commonwealth of Pennsylvania.

2. That Brewster Freeman, having contracted with the plaintiff, on the 18th day of October, 1842, for the purchase of the land claimed by the plaintiff in this suit, and having agreed in said contract to keep the taxes paid on said lands, the defendant cannot acquire any title to them by virtue of any treasurer's sale for taxes, he, the defendant, having been persuaded or induced to do so by contract with Brewster Freeman.

3. That the defendant, having entered into a contract with. Freeman, by which Freeman was to procure the title to the lands and share in the proceeds arising from the sale of them, the defendant is presumed to know the connection or contract that existed between Freeman and the plaintiff, and cannot set up any title to defeat the recovery in this suit.

4. That the contract of 25th January, A. D. 1847, between the defendant and C. Steele and Brewster Freeman, reciting a previous agreement or contract between the defendant and Brewster Freeman, is evidence that the defendant knew of the existence of the contract between Brewster Freeman and R. S. Coxe, the plaintiff; and that the defendant is in no better situation than Brewster Freeman, and is bound in good faith and honesty to keep the taxes on said lands paid; and to permit them to be sold for taxes would be a fraud, and that he could derive no title thereby against the plaintiff.

That from all the evidence in the case the plaintiff is entitled to recover.

WHITE, President J., *inter alia*, charged: "*Brewster Freeman* could not have acquired a title as against Coxe, by purchase at treasurer's sale for taxes, or by purchase from William S. Oviatt, E. J. Cook, or any other person who might have bought at treasurer's sale. By the terms of his contract with Coxe he was bound to pay the taxes, and his neglect to do so, and permitting the lands to be sold by the treasurer, was a fraud on Coxe, and any title he might acquire would enure to Coxe's benefit.

"But his arrangement with Coxe would not thus affect every sale made by the treasurer. It would not affect the title of a purchaser who had no connection with Freeman, but who was buying for himself, even if he knew of the arrangement between Coxe and Freeman. Nor would it affect Sartwell although he had made a contract with Freeman by which Freeman had agreed to procure and did procure a conveyance to him of the title by treasurer's

[Coxe *v.* Sartwell.]

deed from Oviatt, unless Sartwell had notice of the contract between Coxe and Freeman. Without such notice, Sartwell had a right to contract with Freeman for the legal title to the lands existing in another, and to hold it unaffected by any secret equities or trusts that the relations of Coxe and Freeman would create between themselves.

"Such notice cannot be presumed or inferred from the fact that Freeman had an unrecorded article of agreement with Coxe for the purchase of the lands, nor from the fact that defendant had entered into a contract with Freeman, by which Freeman was to procure the title to the lands for defendant, and to share in the proceeds arising from their sale; nor from the recital in their contract of the 25th January, 1847, of a previous agreement between defendant and Brewster Freeman. The notice must be 'actual, express, or circumstantial.'

"Whether defendant had such notice or not, is a question of fact, to be determined by the jury, and may be found by them from all the evidence in the cause having relation to the subject of notice, if there is any evidence on that subject. I am at a loss, however, to know where to find such evidence, and in the absence of it, will not instruct you to presume its existence. I therefore refuse to instruct you as prayed for by plaintiff's counsel, 'That from all the evidence in the cause, plaintiff is entitled to recover;' and say to you that, in the absence of actual, express, or circumstantial notice to defendant of the contract between Coxe and Freeman, he is not affected by that contract, and that he is entitled to a verdict."

Plaintiff's counsel excepted to the charge.

It was assigned for error: 1. The Court erred in charging the jury that notice could not be "presumed or inferred," from the fact that defendant had entered into a contract with Freeman by which Freeman was to procure the title to the lands for defendant, and to share in the proceeds arising from the sale, nor from the recital, in the agreement of the 25th January, 1847, of a previous agreement between defendant and Brewster Freeman.

2. That the notice must be "actual, express, and circumstantial," and in the absence of such notice the defendant is entitled to your verdict.

*Williston* and *Maynard*, with whom was *Goodrich*, for plaintiff in error.—The Court instructed the jury that *Freeman* could not acquire a title as against Coxe, by treasurer's sale for the non-payment of taxes, because by his agreement, dated October 18, 1842, with Coxe, he was bound to pay the taxes, and the acquisition of title under these circumstances would be a fraud against

[Coxe v. Sartwell.]

Coxe—but that *Sartwell* would not be thus affected for want of notice. It was contended that as Sartwell was a partner with Freeman by the contract of 25th January, 1847, that he was also precluded from acquiring title against the plaintiff. Whatever is sufficient to put a purchaser on an inquiry which would lead to a knowledge of the adverse claim, is sufficient to affect him with notice of it: 7 *Watts* 167.

It was contended that although *an assignment of the treasurer's deeds* was procured, yet that it amounted only to a *redemption*. Also, that the Court erred in charging that the notice must be actual, express, and circumstantial, under the circumstances of this case, and that the defendant was not affected by the contract by which Freeman (his co-tenant) acquired title; and that the defendant was entitled to a verdict from the evidence adduced in the cause.

*Brown*, contrâ.—It was said to have been testified by Freeman that the negotiations between him and Sartwell took place *after* the legal title had passed from Coxe, viz., about three months after the expiration of the time for redemption from the sale to Oviatt in 1844. That it was an agreement to procure title to lands in which the plaintiff had no interest, and was made about the time of the transfer by Cowley to Sartwell. The assignment by Oviatt to Cowley was not a *redemption*, but a transfer of the purchaser's right: Orr v. Cunningham, 4 *W. & Ser.* 298.

It was said that there was no notice either actual or legal to *Sartwell* of the contract between Coxe and Freeman, and that the former was not to be affected by equities between them of which he had not notice: 4 *W. & Ser.* 102; 2 *Watts* 459; 14 *Ser. & R.* 333; 8 *Id.* 495; 1 *Jones* 409.

It was said that the defendant had shown an outstanding legal title to two of the tracts, and a title in himself and Steele to the other, obtained for a valuable consideration and without notice of the contract between Coxe and Freeman.

The opinion of the Court was delivered, September 6, 1853, by

Lewis, J.—This is an ejectment brought by Richard S. Coxe, for the recovery of three tracts of land in McKean county. The plaintiff below gave in evidence a regular title to himself, derived from the Commonwealth. The defence, so far as respects two of the tracts (numbered 2520 and 4962), fully establishes an outstanding title in George W. Sartwell, under his purchase, at the treasurer's sale, in 1850, for the non-payment of the taxes of 1848 and 1849. This sale not only extinguished the plaintiff's title, but put an end to that of Sartwell and Steele, under their purchase of No. 4962, at the treasurer's sale of 1846, for the

2 s 2

taxes of 1844. We are therefore to consider the effect of the treasurer's sales to W. S. Oviatt and Elias J. Cook, upon the remaining tract, numbered 4968.

The sale to Oviatt was for the taxes of 1842. His treasurer's deed is dated Sept. 30, 1844; the assignment by him to Zenis C. Cowley is dated Sept. 20, 1846, and the deed from Zenis C. Cowley to Sartwell is dated Dec. 31, 1846. But it appears, from the agreement between Brewster Freeman, of the one part, and Solomon Sartwell and Charles Steele, of the other, dated the 25th January, 1847, that the conveyance from Cowley to Sartwell was not a direct and *bonâ fide* purchase by Sartwell from Cowley, but was intended as a mere transfer of the legal estate, under an arrangement between Brewster Freeman and Solomon Sartwell, by which the latter was to pay one-half of what the tract cost Freeman, and was to sell the lands for the joint benefit of both parties. It appears, by the same agreement, that the money paid to Oviatt and for taxes, amounting to about $150, was to apply to Freeman as part of the "*one-half of what the land cost him,*" to be paid by Sartwell. Thus Sartwell evidently furnished the money which was paid by Cowley to Oviatt, and received a credit for it in his contract with Freeman. The object of the agreement of 25th January, 1847, as is apparent from its face, was merely to put in writing the previous verbal contract, and to admit Charles Steele into a participation as a partner of Sartwell's. What, then, was the nature of the assignment from W. S. Oviatt to Z. C. Cowley? Was it a purchase of a legal title under a sale for taxes, or a redemption, within the two years allowed for the purpose, which invalidated that title? The assignment from Oviatt to Cowley was made before Oviatt's title had become perfect by the expiration of the time allowed for redemption. The consideration paid to Oviatt was precisely the sum required by law for the purpose of redemption—the sum which Oviatt was bound to receive if tendered to the treasurer by the owner. The money was paid and received under a claim of Brewster Freeman's right to redeem. Freeman called on Oviatt, asserted his right to redeem, under his contract with Coxe, the present plaintiff, and exhibited that contract as evidence of his right to redeem. By that contract, which is dated the 18th Oct. 1842, Freeman had agreed to purchase the lands of Coxe and to pay the taxes on them. He made the arrangement with Oviatt for the *redemption* from, not for the *purchase* of Oviatt's title, named Cowley as the person to carry it out; and Cowley "did redeem" accordingly. By the contract with Coxe, Freeman was bound to pay the taxes which existed against the land at the time of the contract. His covenant expressly covered these taxes, and his equitable title, as purchaser, bound him for the taxes to be assessed afterwards. Under that contract

[Coxe v. Sartwell.]

he had an undoubted right to redeem, and that his arrangement with Oviatt amounted to nothing more is too clear for argument. If Cowley or Sartwell intended to acquire title under the treasurer's sale, they should have given the transaction the *form of a purchase*, by waiting until Oviatt's title became perfect and then dealing with him on the footing of one who had a title. By giving the transaction that form, two parties would be constituted as a necessary element in the contract. Oviatt, as one of them, would have had the right to sell or retain the land at his pleasure, and, in case of a sale, to fix upon his own terms. He might have demanded something approximating to the value of the land. These were disadvantages which it was not the pleasure of Mr. Freeman to encounter, and therefore he dealt with Oviatt as one who had none of the rights of an owner—who had no claim upon the land further than as a security for the amount of his bid and the per centage allowed by law, and whose imperfect, title it was in the power of Mr. Freeman to invalidate at any moment within the two years, by a tender of that sum to the treasurer. Oviatt, therefore, instead of selling his title under the treasurer's sale, yielded to the necessity of the case, and at Mr. Freeman's request consented to an act which totally avoided it: Orr v. Cunningham, 4 *W. & Ser.* 294. All purchasers of titles to land, derived under treasurers' sales for non-payment of taxes, take them subject to two contingencies. They may be avoided upon proof of payment of the taxes before the sale, or by a payment or offer of the redemption-money to the treasurer within two years thereafter. These acts are not required by law to be recorded. Until the Act of 14th April, 1840, there was no provision made for recording the treasurer's receipt for the redemption-money. By that Act it *may* be entered by the prothonotary, but this is at the *election* of the owner whose rights are expressly protected by the Act from being in any way affected by the omission: *Dunlop* 910. The assignment by Oviatt to Cowley did not change the character of the transaction. The receipt of the redemption-money avoided his title. He had nothing to convey to Cowley; and Cowley had therefore nothing to convey to Sartwell.

We are of opinion that notice of the redemption of land sold for non-payment of taxes is not necessary in any case. We are also of opinion that the redemption effected in this case by Freeman, the partner of Sartwell, by means of the money of Sartwell, is to be treated as the act of Sartwell himself; and that he stands affected with notice of all that Freeman did in effecting the arrangement. But if this were not so, there is no evidence whatever that Sartwell paid any consideration to Cowley so as to entitle the former to raise the question of notice. The receipt in the body of the deed, or at the foot of it, is sufficient evidence to give effect

to the conveyance as against the vendor; but it is no evidence to extinguish the title of a third person on the ground that the vendee is a purchaser without notice of such third person's right: U. Canal Company *v.* Young, 1 *Whart.* 432; Bolton *v.* Johns, 5 *Barr* 151. To entitle Mr. Sartwell to assume the position of a purchaser without notice, he must prove, independently of the receipt of the grantor in the deed, that he actually paid the consideration before notice of the plaintiff's equity. A *bonâ fide* purchaser is entitled to protection only to the extent of the money paid before notice: Youst *v.* Martin, 3 *Ser. & R.* 433.

The treasurer's sale to Cook stands no more in the way of the plaintiff than does that to Oviatt. The evidence of Cook shows clearly that he made no sale of his title to Steele and Sartwell; that on the contrary Steele claimed the right to redeem; said that he and Sartwell were the owners, and actually did redeem by paying the redemption-money only. In this case the act of Steele was the act of both, and notwithstanding that he procured a conveyance from Cook to himself and Sartwell, both must be deemed cognisant of the real nature of the transaction. Both are bound to know that the pretended purchase from Cook was no purchase at all—that it was a redemption and not a purchase. It is true that none but the owner or a party interested can redeem against the will of the purchaser; but if the latter accepts the redemption-money, the sale is avoided and the redemption enures to the benefit of the rightful owner as effectually as a payment of ·taxes by a stranger would have enured to his benefit and have defeated a subsequent sale by the treasurer.

The Court erred in refusing to instruct the jury that so far as regards tract No. 4968 the plaintiff was entitled to recover.

Judgment reversed and *venire facias de novo* awarded.