# M'Bride *against* Hoey.

Unseated lands, sold for taxes, can only be redeemed by the true owner, or some one authorized by him.

**ERROR** to *Mercer* county.

This was an action of ejectment by William Hoey against James M'Bride, John M'Bride and William Clark. The plaintiff's title was a deed of the 8th of July 1822, from the treasurer of the county for the land in dispute, which was unseated and sold for taxes; about the regularity of which there was no question. The defendants, to maintain the issue on their part, gave in evidence a deed from Theophilus T. Ware, United States collector, of the 3d of July 1821, which was also upon a sale for taxes; and a receipt of the 10th of June 1824, of the county treasurer, for 27 dollars, paid to redeem the land in dispute sold to the plaintiffs. The plaintiff then gave evidence to show that the deed of Theophilus T. Ware was made without authority, there having been no previous assessment of the land, upon which it could have been founded : and it was admitted that therefore the deed would not vest a good title in the defendants. The only question which arose in the cause was, whether the redemption by the defendants, as stated, defeated the plaintiff's title ? The court below (Shippen, president) charged the jury that the title which the defendants alleged to be in them, by virtue of the deed from Theophilus T. Ware, was not such as would authorize them to redeem the land; and that a redemption by any one but the true owner would be a nullity. A verdict and judgment passed for the plaintiff.

*Ayres*, for the plaintiff in error.

M'Bride is in possession under Clark, who claimed under the deed

[M'Bride v. Hoey.]

from T. T. Ware, the agent of the government in the sale of the land for the payment of taxes due to the United States.  C. Clark paid the redemption money within two years from the treasurer's sale to Hoey.   There was no attempt made to show the irregularity in the proceedings and sale to Clark under the act of congress.   The court decided that the deed to Clark did not give such a colour of title as gave him the privilege to redeem.   We contend that this belongs to others, as well as the owner in fee simple.   Clark had such a title as enabled him under the act of 1815 to redeem.   For this purpose any priority of title or colour of right would be sufficient.   Where the tax is paid, and the purchaser gets his money, justice is done to all parties ;  the object of the redemption provision in the act of 1815 is fully accomplished ;  the policy of the law is satisfied ; the title of the true owner is saved, for his right is not impaired by another, who has not the legal title, redeeming.   M'Bride *v.* Hoey, 1 *Penns. Rep.* 54 ;  Creigh *v.* Wilson, 1 *Serg. & Rawle* 38.

*Banks,* for defendant in error.

The single question in this case is, can any one but the owner at the time of sale redeem the lands sold for tax, within the two years, as provided by the act of the 13th of March 1815 ?

On the part of the plaintiff in error it has been contended here, and was also contended in the court below, that Clark had a right to redeem the land, inasmuch as he claimed the same by virtue of the collector's deed, which was given in evidence.   On the part of the defendant in error it was and is contended, that inasmuch as the collector's deed did not vest the title to the land in Clark, he lost no right by the sale, and had no right which he could redeem ;  and, therefore, that the payment made by him of the tax and costs and 25 per cent to the county treasurer, did not affect, or in any degree invalidate the title which Hoey acquired to the land by virtue of his purchase.

To determine this question correctly, it is necessary to look into our acts of assembly regulating the sale of lands for taxes.   It is by those laws that the rights of these parties must be tested, and ultimately determined.

It was clearly shown by evidence in the court below, that the assessment of the direct tax, for which the land was sold, when Clark became the purchaser, was void.   It was conceded by the counsel then, as he concedes now, that that sale did not vest the title to the land in Clark.

I contended in the court below, as I now contend, that none but the owner at the time of the sale can redeem.   I think on examination the court will entertain the opinion that this proposition is clearly maintained by the express provisions of the law on the subject.

By the second section of the act of the 3d of April 1804, the sheriff is directed to take bond in his own name for the surplus money that may remain after paying the tax and costs, and to file the same

[M'Bride v. Hoey.]

in the prothonotary's office. By a subsequent law this duty is enjoined upon the county treasurer, who makes the sales, and not the sheriff.

By the fourth section of the same act, the bonds thus taken and filed are made to bind the lands sold, as effectually, and in like manner as a judgment ; and the owners of said land at the time of the sale, their heirs, assigns or legal representatives, may within five years cause actions to be entered in the name of the sheriff for the use of the said owners, &c.

By the fifth section of the same law, it is enacted that sales made agreeably to the directions of this act shall be in law and equity valid and effectual, to all intents and purposes, to vest in the purchaser of lands so sold all the estate and interest therein that the real owner or owners thereof had at the time of the sale.

By the fourth section of the act of the 13th of March 1815, it is provided that, " if the owner or owners of land, sold as aforesaid, shall make or cause to be made, within two years after such sale, an offer or legal tender of the amount of the taxes, for which said lands were sold, and costs, and 25 per cent thereon, to the county treasurer, &c. ; or in case the owner or owners shall have paid the tax, &c. ; then, and in either of these cases, said owner or owners shall be entitled to recover the same by due course of law," &c.

These are the provisions of the law, which, in my judgment, must determine this cause.

By this rule all the estate and interest that the real owner had, both in law and equity, in the land at the time of the sale was vested in Hoey. He became the owner. The title was thus transferred to him. This title could be defeated in but one way; and that by the owner alone. He might redeem it within two years, if the tax had not been paid ; and if the tax had not been paid before the sale, and the owner did not redeem within two years, his title was no longer defeasible, but become absolute.

The bond for the surplus money is the property of the owner of the land at the time of the sale. He has a vested interest in it. He alone has a right to receive it. He alone could cause an action to be entered to recover it. No one could recover the amount of this bond without showing that he had been the owner of the land at the time of the sale. If Clark had sued on the bond, the evidence which was given in this case would not have entitled him to recover the money. He could not release the money due on this bond. His receipt would not have secured Hoey from paying again to the owner when called on by him. If Clark could not recover the money, or show a receipt for it, most assuredly he could not cancel the bond by a redemption. The owner has his right of election to redeem the land or take the surplus money : of this right no third person can deprive him. The owner may neglect to redeem, and thus the title may become absolute : of this chance no third person has a right to deprive the purchaser. The instant the deed is de-

[M'Bride v. Hoey.]

livered, and bond taken, the title to the land vests in the purchaser, and if the tax has not been paid, and the owner does not redeem, that title is perfected.

If the treasurer had refused to receive the redemption money from Clark, could he have recovered the same as is provided in the act of 1815; I think he could not, because he is not the owner. When the law says, the owner may recover by due course of law, it does not mean that he may recover without showing title. It presupposes that he can show title. If he was the owner, he could show title. If he cannot show title, he fails to show that of the owner, and is not the person for whom the provision was made.

It is said that an heir may redeem, but surely he must show that his ancestor was the owner at the time of the sale. We are told that a judgment creditor or mortgagee may redeem; if so, I maintain that title must be shown in the judgment debtor and mortgagor.

By the doctrine I contend for, Clark is not deprived of any right. His condition is the same as if no rule had been made. He must meet and contend with the title of the owner, and may as well meet it in Hoey as any other. He has redeemed all the right he lost. If the right was not in him he could not redeem it. If the owner would not redeem it, it still remained in Hoey. The law recognises none but the owner and purchaser. Clark failed to show that he was the owner, and I think the court below was most clearly right, and that the judgment should be affirmed.

The opinion of the Court was delivered by ·

KENNEDY, J.—The only question presented in this case is, whether any other than the true owner, or some one authorised by him, can redeem unseated lands, sold in this state for non-payment of the taxes assessed on it. This question must be decided by a reference to the acts of assembly authorising the assessment of taxes on unseated lands, and the sale of them in case of neglect by the owners to pay such taxes.

By the act of the 3d of April 1804, all unseated lands within this commonwealth are directed to be assessed for the purpose of raising county rates and levies, in the same manner as other property. And in case such assessments should remain unpaid for the space of one year after being assessed, the lands were ordered to be advertised and sold by the sheriff or coroner of the proper county, under a warrant from the commissioners of the county, to be issued by them for that purpose. The sheriff or coroner, after having made sale thereof, was requested to take from the purchaser a bond, in his own name, with a warrant of attorney annexed, for any surplus money that might remain after satisfying and paying the taxes and costs accrued thereon, and to file such bond forthwith in the prothonotary's office. By the fourth section of this act, the bond, when taken and filed, is made a lien upon the land sold, from the date of the deed executed by the sheriff or coroner, in like manner as a judgment for the same

[M'Bride v. Hoey.]

amount; and the *owner* of said land *at the time of sale*, or *his heirs*, *assigns* or other *legal representatives*, may at *any time* within five years after such sale, cause an action to be entered on the docket of the prothonotary, in the office where the bond is filed, in the name of the sheriff or coroner, as one or the other may happen to be the obligee named in the bond, for the use of the said *owner, his heirs, assigns* or other *legal representatives*. And if the money mentioned in the bond be not paid within three months after such entry, execution to be issued forthwith for the recovery of it. By a subsequent act of the 4th of April 1809, the powers vested in and duties enjoined on the sheriff, were transferred to, and required to be performed by the treasurer of the county. And again, by an act passed afterwards, on the 13th of March 1815, after appointing the second Monday of June 1816, and the like Monday of June every two years succeeding thereafter, for the sale of unseated lands by the treasurers of the respective counties where the taxes shall remain unpaid, and then making some other provisions on the subject, it is enacted by the fourth section thereof, that " if the *owner* or *owners* of lands *sold* as aforesaid, shall make or *cause* to be made within two years after such sale, an *offer* or legal *tender* of the amount of the taxes for which the said lands were sold, and the costs, together with the additional sum of 25 per cent on the same to the county treasurer, who is thereby authorised and required to receive and receipt for the same, and to pay it over to the said purchaser, upon demand, and if it shall be refused by the said treasurer, or in case the owner or owners of lands so sold shall have paid the taxes due on them previously to the sale, then, and in either of these cases, said *owner* or *owners* shall be *entitled to recover* the same by course of law, but in *no other case*, and on no other plea *shall an action be sustained.*"

The plaintiff in this case claimed under a sale and deed of conveyance made by the treasurer of Mercer county, on the 8th of July 1822, for taxes previously assessed on the land in question, as unseated. The validity of the sale and the deed was not controverted, but admitted to be good.

The defendants, however, in order to show that the plaintiff's claim had been nullified, gave in evidence a deed of conveyance bearing date the 3d day of July 1821, showing a sale made of the land by Theophilus T. Ware, as designated collector of taxes assessed by the United States on the land, to William Clark, one of the defendants: and that Mr Clark, claiming the land under this deed of conveyance and a right under the same to redeem it, on the 10th of June 1824 paid to the treasurer of Mercer county the amount of the taxes and costs for which it had been sold, beside the 25 per cent thereon. The sale of the land to Mr Clark by the designated collector, was shown to be clearly void, and of no effect ; and, indeed, admitted so to be on the argument before us.

The defendants notwithstanding, however, contended that the sale and deed of conveyance by the county treasurer to the plaintiff,

were avoided by the repayment of the amount of taxes and costs, together with the 25 per cent thereon to the county treasurer, by Mr Clark, within the two years after the sale to the plaintiff.

Now by the express terms of the act of 1804, as also those of the act of 1815, the fee simple in the land is directed to be sold ; and the sale and the deed made by the county treasurer, in conformity to these acts, pass immediately a fee simple estate in the land so sold to the purchaser; subject, nevertheless, to be defeated, by the *owner's* paying or *causing* to be paid, within the two years allowed for that purpose, the taxes for which the land was sold, and the costs, with the additional sum of 25 per cent, or at least *tendering* the same to the county treasurer.

The purchaser of the land at the county treasurer's sale, having become thus invested with the fee simple estate in the land, it appears to me that it would not readily occur to any one, that any other than the owner of the land at the time of the sale, or his legal representatives, could divest the purchaser of his right by a performance of the condition.   According to the principles of the common law, if a man made a feoffment in fee, by way of mortgage, upon condition to be void upon payment of money by the feoffor, at a day, and a *stranger* of his own head tendered the money, the feoffee was not bound to accept it ; *Litt. sec.* 334 ; though tendered for an *infant ;* 1 *Bac. Abr. (by Wilson) tit. Conditions, p.* 662.   But if a doubt could exist, in any case, with respect to a question of this nature, it appears to me that the words of the several acts of assembly on this subject are even more than sufficient to dispel all doubt from this case.

First, by the fourth section of the act of 1804, it is " the *owner* of the land at the time of the sale, *his heirs, assigns,* or other *legal representatives*" who are authorised to enter an action in the prothonotary's office, on the docket, for the amount of the bond filed, for the surplus money, and to prosecute the recovery of it by execution *for their own use.*

By the terms of the act, no other than the *owner* of the land at the time of the sale, his *heirs, assigns,* or other *legal representatives,* has any right whatever to demand or receive the money upon this bond. This being the case then, I take it that it necessarily follows that no other can release or discharge the purchaser from his obligation. If no one but the *owner* of the land at the time of the sale, his *heirs, assigns,* or other *legal representatives* have the right to receive the surplus money due on the bond, and to give a sufficient acquittance, of which a doubt cannot be entertained, if the terms of the act of assembly are to be regarded at all; I would ask, then, what would be the situation of the purchaser of the land, if any other than the owner of it at the time of the sale, or his legal representative, or some one authorised by him or them, has the power and capacity to redeem ? If a stranger can redeem, the inevitable consequence may be, that the purchaser may by this means have his title to the land

[M'Bride v. Hoey.]

set aside, and be afterwards compelled by the owner, at the time of the sale, or his legal representatives, who are unwilling to take it, to pay the amount of his bond.    This would be so unjust and unreasonable, that if the words used in the act would even admit of such construction, but at the same time were susceptible of a more reasonable one, it would be the duty of the court, in expounding it, to prefer the most rational of the two.

But the right of redemption is given by the fourth section of the act of 1815 : therefore let us next turn to the terms of it, and we shall see that it is given to the " owner or owners of the land," and they alone are thereby authorised to do it, or to cause it to be done, by offering or making a legal tender within two years after the sale, of the amount of the taxes for which the lands were sold, and the costs, together with the additional sum of 25 per cent on the same to the county treasurer.    Having done this, they are authorised to maintain an action of ejectment for the recovery of the lands, if necessary ; and it is further expressly declared that in *no other case* shall they be entitled to recover the land, excepting when they shall have paid the taxes due on it previously to the treasurer's sale.

It has, however, been argued that this construction may work injustice to judgment creditors, and in some instances deprive them of a security which otherwise they might have for the payment of their debts.    This, perhaps, is barely possible ; but it is most likely that no great loss will ever be sustained by it.  · And unless we depart from the plain import and meaning of the terms employed in the act, I do not see how the right of redemption can be extended to judgment creditors ; for they are not considered owners of, nor as having a right, in any respect, to the land : at most, they have but a lien on it, which is neither a *jus ad rem* nor *jus in re.*

It is evident, from the terms of the act, that their rights or interests never once entered into the view or contemplation of the legislature, in framing and passing the act.

The same argument might be urged, with like force and reason, in favour of permitting a judgment creditor to enter into the lands of his debtor, where he had been disseised of them for nearly a space of twenty-one years, and to make claim on behalf of his debtor, in order to prevent the statute of limitations from running and barring his right, by which the creditor might possibly lose his debt.    But such a thing, I presume, has never been thought of, and certainly could not be sustained for a moment if it were.

The very circumstance, however, of no provision having ever been made for the security of creditors, in such cases, is conclusive evidence that the loss, if any, sustained by them on such account has been very inconsiderable indeed.

It is the interests alone of the owners of unseated lands, at the time of the sale of them for taxes, that the legislature intended to provide for, by securing to them the right of redemption for a limited time.    Then who is the owner ?    There can be but one good title

[M'Bride v. Hoey.]

for the same land; and whoever is invested with it must be considered the owner of the land. It is clear that Mr Clark had no title at all to the land in question at the time the plaintiff bought it; nor had he any at the time he undertook to redeem it, and, therefore, as owner of it he could not redeem. Neither did he show that he had any authority from the owner to redeem as agent for him; nor that his act in redeeming was ever approved and accepted of by the owner of the land. For the owner having the right to redeem may do it either himself in person or he may do it by another. *Facit per alium, facit per se.* So it may be that if a stranger do it without the knowledge or authority of the owner, and he afterwards, within the two years, approve of and adopt it, that it would be good; but until the owner does so approve of it, the purchaser at the county treasurer's sale cannot be considered as divested of his estate in the land. The maxim *omnis ratihabitio retro trahitur et mandato aequiparatur* would probably apply in such case. *Co. Litt.* 206 *h,* 207 *a;* 1 *Bac. Abr. (by Wilson) tit. Conditions* 662.

Judgment affirmed.