Patterson *against* Brindle.

In an action of ejectment, under the plea of "not guilty," the defendant may
prove that the plaintiff was dead at the time when the suit was instituted.

A power to take care of land, carries with it a power to pay the taxes assessed
upon it, or to redeem it if sold by the treasurer as unseated, for the payment of
the taxes; and in such case the death of the owner is not such a revocation of
the power as will make void a redemption of the land by such agent, after a sale
of it, as unseated.

The right to redeem land, sold as unseated, for the payment of taxes, should
not be narrowed down by a strict construction.

ERROR to the district court of *Allegheny* county.

This was an action of ejectment by William Brindle against
James Patterson to recover a lot of ground in Birmingham, in
which the defendant pleaded not guilty.

The plaintiff gave in evidence a deed to him by the defendant
dated May 11, 1816, and rested.

The defendant offered to prove that the plaintiff was dead at the
institution of this suit; to which the defendant objected, that it
should have been pleaded in abatement, and could not be given in
evidence under the general issue: and of this opinion was the court,
who overruled the evidence and sealed a bill of exception.

The defendant then gave in evidence an assessment of the lot as
unseated, and a sale of it to him by the treasurer on the 13th of
June 1836.  To rebut this the plaintiff called Peter Brindle as a
witness, who testified as follows: "I saw this deed" (the original
title of the plaintiff) "signed, sealed and delivered: my brother
gave it to me the day it was signed and delivered to him, to take
care of it till he returned, and to get it recorded: and to take care
of the property until he returned.  I paid the taxes for two or three
years: there are receipts given to me" (for the taxes of two years):
"I did not know when it was sold at commissioners' sale: I re-
deemed it.  My brother left this county the day after he purchased
the lot: he went to Franklin county: I have not heard from him
for fourteen years: I have received no other authority since: he
had a wife: do not know that he had any children: I had this suit
instituted in my brother's name."

[Patterson v. Brindle.]

Under the authority thus established it appeared that the lot had been redeemed by Peter Brindle on the 4th of March 1838. It also appeared that James Barr had occupied the lots by an agreement with Peter Brindle up to 1830, and paid the taxes until that time. It was for taxes which accrued subsequently that the lot was sold. It also appeared in proof that the plaintiff had three brothers, of whom Peter Brindle, the witness, was one.

The court below was of opinion that the agency of Peter Brindle was such as authorised a redemption of the land by him, and that the defendant's title was thereby defeated: and this although the jury might be satisfied that at the date of the redemption the principal was dead.

*M'Candless* and *Biddle*, for plaintiff in error, on the subject of the right to take advantage of the plaintiff's death upon the general issue, cited 3 *Serg. & Rawle* 409; *Act of* 13*th April* 1807, *sect.* 4; 1 *Watts* 76; 1 *Rawle* 251, 290; 15 *Serg. & Rawle* 151.

*Wood* and *Williamson, contra*, on the same point cited 1 *Chit. Pl.* 457; 8 *Term Rep.* 474; 1 *Bl. Rep.* 197; 3 *Wils.* 51; 2 *Strange* 1120.

The opinion of the court was delivered by

SERGEANT, J.—The action of ejectment at common law was a series of fictions, invented, from time to time, for the purpose of trying titles to land more conveniently and expeditiously than under the ancient modes of proceeding in real actions. The common law forms of proceeding were introduced into Pennsylvania at its settlement, as part of the English law, and continued to be practised until the year 1806, when the legislature deemed it expedient to abolish the fictitious mode of proceeding by serving a declaration, judgment against the casual ejector, confession of lease, entry and ouster, and other artificial proceedings which had been employed in this suit, and to substitute the ordinary and more intelligible mode of taking out a writ in the name of the real plaintiff against the defendant in possession, and in other respects assimilated the process of ejectment to the usual common law action. This was done in order to dispense with fictions now no longer necessary to justice, and to render the action more intelligible to the parties and to the community. It was not intended, however, to alter the action in its substance: so far from it, the act declares, that the remedy should be as full and effectual as in ejectments in the forms previously used: and it has been considered that the principles of the ancient action were intended to be preserved, under the new forms, in every case where it was possible so to do without great inconvenience and manifest incongruity. Under the ancient mode of proceeding, the plea was not guilty; every matter in bar could be given in evidence under that plea: and as to pleas in

[Patterson v. Brindle.]

abatement, there is no instance in which they had been employed in ejectment, except in England, in the plea of ancient demesne, of which there are instances in 8 *Term Rep.* 474; 1 *Black. Rep.* 197. In the same manner by our act of assembly it is declared, "that the plea in ejectment shall be not guilty," and a plea in abatement in this suit has not been known in our practice. Under the former mode of proceeding, when the lessor of the plaintiff was dead before the commencement of the action, the defendant might move to have the demise by such a lessor struck out of the declaration, and if the fact was not denied, the motion was granted as a matter of course, on the ground that it was an irregularity to make a dead man a lessor. If no such motion was made, but it appeared on the trial, it was a ground of nonsuit, in courts having power to order a nonsuit, if no other count existed and was supported. Doe *v.* Butler, 3 *Wend.* 183; 1 *Caines* 20; 1 *Johns. Cas.* 392; *Caines Cas. in Error* 102; 3 *Johns. Rep.* 259. Where there was not a nonsuit, it was held that there must be a verdict for the defendant. See *v.* Greenleaf, 6 *Munf.* 303. This point has never been decided in this state, although in Galbraith *v.* Campbell, 1 *Watts* 76, there is an intimation on the subject, by Mr Justice Kennedy, who, however, distinctly declares, that he did not wish to be considered as giving a decided opinion upon it, as it was unnecessary to decide the question in that cause. I think that the defendant was entitled under the plea of not guilty in this ejectment, to prove that the plaintiff was dead, at the institution of this suit, and that this was the regular mode of taking advantage of the objection in ejectment. So also the defendant had a right to show that the title was not in the plaintiff at the institution of the suit, but in others, on the settled principle recognized by our act of assembly, that the defendant may defend himself in ejectment on the title of third persons.

The other error to be considered is that which relates to the authority of Peter Brindle to redeem the land within two years after its sale for taxes; and here I concur with the court below, that the neglect to pay the taxes in the year 1835, was not an abandonment of his agency. He had leased it to a tenant who was to pay the taxes, and who did pay them up to 1830, and there may have been various reasons why the agent afterwards omitted to pay them, without necessarily inferring from that circumstance, that he abandoned or renounced the agency, particularly as in March 1838, he, as such agent, paid the amount required to the treasurer, in order to redeem the lots. Nor can it be doubted that the authority given to Peter Brindle, by his brother, was sufficient to enable him to redeem; his brother gave him the deed, to take care of it till he returned, and to get it recorded, and to take care of the property till he returned. A power to take care of the property carried with it the authority to pay the taxes upon the property, either as assessed, or in the shape of redemption money, in which interest and costs

[Patterson v. Brindle.]

are added to the taxes. The owner might not be liable to the agent to reimburse to him such interest and costs, where the sale was occasioned by the agent's neglect; but certainly the act of the agent in redeeming might, under such circumstances, be deemed the act of the owner, by whom he was employed, if he ratified it. A parol authority is sufficient for this purpose. If the plaintiff were living at the time of the redemption, the case would therefore be clear of all difficulty on this score. If, however, the plaintiff died before the redemption, then it is contended, that by his death, (which, from lapse of time, it is alleged, is to be presumed,) the power to his brother was revoked, and the agency ceased, and therefore the redemption, not being directly or indirectly made by the owner, did not revest the title. This is a question of considerable importance to persons owning lands at a distance, and placed under the necessity of employing agents to attend to them, and may happen to die leaving minors and others dispersed in different places, often not in a situation immediately to know or look after the property. I am inclined to think, however, that such a power given to another in relation to property, may be considered as a power coupled with an interest, and if so intended by the principal or necessary to the preservation of the property, is not revoked by death, but continues until revoked by those having title. Here the brother had such an interest; he was a trustee for the time being; he paid the taxes; he had possession, and gave a lease of it to a tenant. He had a sort of ownership thereby, which appears to me to have been sufficient to enable him to redeem, for the benefit of all having title. "A law," says Mr Justice Baldwin, in Dubois *v.* Hepburn, 10 *Peters* 1, "authorizing the redemption of lands sold for taxes, ought to receive a liberal and benign construction in favour of those whose estates will be otherwise divested: especially when the time allowed is short, an ample indemnity given to the purchaser, and a penalty is imposed on the owner. The right to redeem should not be narrowed down by a strict construction. Any right which, in law or equity, amounts to an ownership in the land, any right of entry upon it, to its possession or enjoyment, or any part of it, which can be deemed an estate in it, makes the party an owner, so far as it is necessary to give him the right to redeem." And I also concur with the court below, that if Peter Brindle would be one of the heirs with his two other brothers, he, as a tenant in common with them, had a right to redeem for himself and co-tenants, according to Dubois *v.* Hepburn, 10 *Peters* 1.

Judgment reversed, and a *venire facias de novo* awarded.