# Lennig's Appeal.

93 301
126 423
93 301
147 361
93 301
175 498

1. Where a property has been sold under a judgment upon a mortgage, and an auditor appointed to make distribution of the purchase-money, a second mortgage-creditor, where there has been no fraud, cannot defeat distribution to so much of the judgment obtained on the prior judgment as might have been prevented against the mortgagor, had he set up a defence of usury in the consideration.

2. In the absence of proof that a fraud was intended upon him, a second mortgagee cannot thus collaterally attack the first mortgage for usury.

3. The mere fact that a debtor has paid or agreed to pay in good faith, and in the usual course of business, more than six per cent. interest, is not enough to establish a fraud upon creditors, and the mere refusal of a debtor to contest the claim against him does not of itself amount to such fraud. It is only where an usurious contract is entered into collusively as a scheme to hinder and delay creditors, that the latter have any standing to contest a judgment entered upon such usurious contract.

4. Greene v. Tyler & Co., 3 Wright 361, distinguished.

[Lennig's Appeal.]

February 25th 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ.   GREEN, J., absent.

Appeal from the Court of Common Pleas, No. 1, of *Philadelphia county* : Of January Term 1880, No. 196.

This was originally a writ of scire facias on a mortgage executed by Christian Mayers to the appellants, as trustees under the will of Frederick Lennig, deceased, of Mrs. Ellen D. Lennig's three children, dated May 3d 1875, and recorded May 27th 1875, to secure the sum of $7000.   On this writ judgment was entered for want of an appearance on two returns of *nihil*, and the property sold, being bought by the appellants for a sum a little exceeding the amount of their judgment and costs.   The sheriff made a special return under the Act of 1846, setting forth that, the appellants being first lien-creditors, as appeared by the certificates of search, he had taken their receipt to the extent of the amount of their judgment.

To the return exceptions were filed by the second lien-creditor, the " Twentieth Ward Building Association," on a mortgage executed to them by Mayers, the defendant, dated May 1st 1875, but not recorded till June 3d 1875, a week after that of the appellants. These exceptions were to the allowance of a sum of $280, included in the mortgage-debt, which it was asserted was the amount of an usurious discount, deducted or withheld at the time of the loan. This loan was paid into court by agreement, and the sheriff allowed to acknowledge the deed to the appellants.   The case was then referred to an auditor to make distribution.

The auditor, E. Greenough Platt, Esq., inter alia, reported :

" It was contended, however, that a second mortgage stood on a different footing from a judgment-creditor.   Two grounds were suggested for this : 1. That he was a purchaser ; and 2. That he was mortgagee of the equity of redemption, and therefore had the same right to redeem that the debtor had.

" The answer to the first objection is the decision of Verner *v.* Carson, 26 P. F. Smith 440, and Miners' Bank *v.* Roseberry, 31 Id. 309, where it was substantially held that a purchaser could not object to the lien of a judgment, because it made no difference to him whether in purchasing the property he paid the money to the lien-creditor or to the debtor as a part of the purchase-money for the property.

" As to the second objection, your auditor is of opinion that, whatever might be the rule, if the second mortgage should seek to redeem before judgment, under the cases, he is concluded by the judgment, as is conclusively shown in Titusville Bank's Appeal, 4 Norris 528, unless he can show such fraud or collusion as would bring it within stat. 13 Eliz. c. 5. * * * The auditor can therefore see no reason why a second mortgagee can attack a prior lien, if a judgment-creditor could not.   That a judgment-creditor could

not, in this case, is conclusively settled by Titusville Bank's Appeal, *supra*."

The auditor then awarded the amount in controversy to the plaintiffs.

To this report the Twentieth Ward Building Association excepted, and the court, Pierce, J., sustained the exceptions in the following opinion:

"The question raised by these exceptions is, whether it is competent for a second mortgagee to question the validity of the first mortgage on the ground of usury. The facts in this case are not in dispute. It was admitted before the auditor that the first mortgage, which is for $7000, was taken from the mortgagor at a discount of four per cent., or $280 less than the face of the mortgage. It was also shown that the second mortgage was recorded and became a lien on the property before judgment was obtained on the first mortgage. The auditor says in his report: 'There can be no doubt that the case of Greene *v.* Tyler, 3 Wright 361, expressly rules this question, unless it is overruled by subsequent decisions.' In this we agree with him; but differ from him in thinking that it is overruled by any of the subsequent cases. That it has not been expressly overruled, is clear from the fact that none of the subsequent cases proceeded on the same state of facts, and our duty to the Supreme Court and the value of the doctrine *stare decisis*, alike require that we shall adhere to what has been authoritatively decided.

"The principles of Greene *v.* Tyler were adopted in Bachdell's Appeal, 6 P. F. Smith 386, which was a contest between judgment-creditors.

"In Verner *v.* Carson, 16 P. F. Smith 440, it was held that a purchaser of real estate bound by a judgment which was usurious, had no such equity as entitled him to go behind it, in order to contest the amount of the plaintiff's claim, as it was immaterial to him whether the purchase-money was paid to the vendor, or went in satisfaction of a judgment against him.

"Bank *v.* Roseberry, 31 P. F. Smith 309, which was principally relied on by the auditor, was the case of a purchaser questioning an usurious judgment. MERCUR, J., expressly distinguishes that case from Greene *v.* Tyler, by saying that the lien of the second mortgage in Greene *v.* Tyler, attached before judgment was confessed on the first mortgage. In that respect Greene *v.* Tyler, and this case, are alike, with this difference, that in Greene *v.* Tyler judgment was confessed, and in this case judgment was upon two *nihils* for want of an appearance. Whatever rights the second mortgage-creditor had, had attached before the judgment on the first mortgage. Besides, an action on a mortgage is a proceeding *in rem;* and any one interested in the mortgaged premises, has a right to intervene *pro interesse suo*, with the same effect, and, in some

instances, with greater effect than the mortgagor, because he might be estopped by previous acts or declarations. We rest our decision of this case, however, on the authority of Greene *v.* Tyler, *supra,* which we do not recognise as having been overruled by any of the subsequent cases. It has simply been distinguished as having been decided on transactions prior to 1858, the date of our present usury law, although it is manifest from reading the opinion of WOODWARD, Justice, in that case, that he decided it in view of the Act of 1858. In the Appeal of the Second National Bank of Titusville, 4 Norris 528, PAXSON, J., said it is not essential to question the soundness of Greene *v.* Tyler, and conceded that it was rightly decided to the extent of its own facts.

"Exceptions sustained, and report referred back."

The auditor made a second report, to which the plaintiff excepted. The court however overruled the exceptions, and made a decree of distribution in accordance with the report of the auditor. Plaintiffs then took this appeal and assigned this decree for error.

*Henry Wharton,* for appellants.—The doctrine of this court in the cases of Miner's Bank *v.* Roseberry, 31 P. F. Smith 309 ; Appeal of Second National Bank of Titusville, 4 Norris 528; Wheelock *v.* Wood, ante, page 298, is clear, that since the change in the usury law by the Act of 1858, a subsequent creditor cannot dispute a judgment before an auditor on the ground of usury.

The right to complain or defend on the ground of usury, is thereby exclusively vested in the debtor. Where it does not appear that there was a fraud intended against him, a subsequent judgment creditor cannot set up this defence. In this state, Greene *v.* Tyler, 3 Wright 361, undoubtedly adopted the New York authorities, but since the Act of 1858, the security for an usurious loan is not void, per se, as to principal or interest. Under the Act of 1723, the taking of usury was expressly forbidden, and the penalty imposed was recoverable in a *qui tam* action. Under the Act of 1858, it is lawful for the debtor, at his option, to retain the usurious interest from the amount of his debt, but he alone can exercise this option.

Judgment was obtained on a scire facias on the mortgage, and the mortgaged property sold under it. Such a judgment cannot be attacked collaterally, except for fraud; not even before an auditor appointed to distribute the very fund produced by a sale under it: Dyott's Estate, 2 W. & S. 557 ; Thompson's Appeal, 7 P. F. Smith 175 ; and the Appeal of the Second National Bank of Titusville, *supra.*

The fact that there is a controversy about a thing, a *res,* does not make a suit between two persons a proceeding *in rem.* Therefore, to speak of a mortgagee having any special right to intervene for such a reason, involves a false analogy. If he had that right,

[Lennig's Appeal.]

it would extend only to and be limited by his admission to defend in the suit itself; not to contest the judgment collaterally. But in truth, the distinction is purely imaginary; and for such purposes, he is neither better nor worse off than any other lien creditor.

*William Gorman*, for appellees.—Since the Act of 16th of June 1836, Purd. Dig. 656, sect. 108, feigned issues have been granted in questions of distribution at the instance of any person interested, to try any fact in connection with such distribution which shall be in dispute. The statutory words, "any person interested," mean judgment or other lien creditor: Smith *v.* Rieff, 8 Harris 365.

In Reigart's Appeal, 7 W. & S. 267, such a creditor was said to have a right to an issue and trial by jury, of which the court could not deprive him. The right was not questioned in Schultze's Appeal, 1 Barr 251, nor in Johns *v.* Erb, 5 Id. 232, and has been granted in a multitude of more recent cases. If a judgment creditor's right is thus absolute, much more a second mortgagee's, for he has a specific lien on the very thing sold by the sheriff—a lien which is not subject to statutory limitation, but rests on contract. If a mortgagee may have an issue, what fact is more fit for him to allege, than, that the prior mortgage was usurious. Usurious contracts are not absolutely void; they are voidable only for the excess as between the immediate parties; that is, for the excess over the principal and six per cent. interest. But if the debtor will not insist on his rights, or will combine with his creditors to give him a judgment for more than his just dues, it cannot be said that a subsequent mortgagee, whose lien attached before the judgment was confessed, is concluded by the debtor's act: Greene *v.* Tyler, 3 Wright 361; Bachdell's Appeal, 6 P. F. Smith 386. This case is still stronger, for here the debtor is dead, and the judgment was obtained for want of an appearance on two returns of *nihil habet.*

This is a judgment *in rem;* it is no personal judgment. The object of the judgment is merely to turn the land into money for distribution, and after it has done so, it has accomplished its object; you show cause why execution should not be had of the land. The money is brought in for distribution, and is claimed upon the mortgage itself; it does not bind the person of the debtor, nor any other of his lands.

Mr. Justice TRUNKEY delivered the opinion of the court, March 8th 1880.

Among the facts reported as admitted are these: 1. That the mortgage for $7000 was given to Lennig et al. for $6720, which was the sum actually paid to the mortgagor; 2. That the building association make no objection to the amount of the judgment on

12 NORRIS—20

the mortgage, except for usurious interest; and 3. That there is no allegation of fraud, and the only objection to Lennig's judgment is, " that there had been what is known as a bonus mortgage at the rate of four per cent. discount." Hence, the sole question is, Can a second mortgage-creditor, where there has been no fraud, defeat distribution to so much of the judgment obtained on the prior mortgage as might have been prevented against the mortgagee, had he set up a defence of usury in the consideration? This the auditor denied, and was overruled by the court on the authority of Greene *v.* Tyler & Co., 3 Wright 361. That case originated prior to the repeal of the Act of March 2d 1723, was a feigned issue, awarded for what was deemed good cause, for trial of facts in dispute, and it was decided that a subsequent mortgage-creditor could attack a judgment founded on a prior mortgage, on the ground of usury. The meagre report furnishes no facts except what are stated in the opinion, and that reveals that the mere fact that usurious interest was included in the mortgage and judgment was held a fraud as to creditors. It is said, " If a mortgagee may have an issue, what fact is more fit for him to allege than that the prior mortgage was usurious—that all the money is not legally demandable upon it which is nominated in the bond?" " When creditors claim equities through their debtors, they are usually estopped by what the debtors do; but fraud never estops creditors. What Greene alleges is a fraudulent setting up of the prior mortgage for more than is due upon it. Call it usury or what you will, it is an attempt, in his view of the case, to take away from his lien, by virtue of the prior mortgage, more money than the mortgagees in that mortgage have a right to take." Treating such fact as a fraudulent collusion against subsequent lien creditors, by all authority, they could attack the judgment collaterally. But the law of usury is not the same now as then.

The Act of 1723 enacted that no person should, directly or indirectly, on any bond or contract, take for the loan or use of money, or any other commodities, above six per centum per annum ; and that if any person should receive or take more than six per centum per annum, on any bond or contract, he should forfeit the money and other things lent, one-half to the governor for use of the government, and the other half to the person who should sue for the same. Under that statute, the receipt of money on account of an usurious contract was a consummation of the offence, from the consequences of which the party could not relieve himself by a subsequent release of the excess which was usurious : Kirkpatrick *v.* Houston, 4 W. & S. 115. Immediately on commission of the offence, any person could sue for the penalty in a *qui tam* action. The taking of usurious interest was unlawful—sometimes considered fraudulent, as already seen.

The Act of May 28th 1858, Pamph. L. 622, made a radical

change in the law, but the adjudications under the former statute were not quickly effaced from the judicial mind. In distributions it often occurred that judgments were reduced because of usury, and, in some instances, with the apparent, if not real, sanction of this court, as in Bachdell's Appeal, 6 P. F. Smith 386, where it was done before an auditor. The real ground of such procedure was the same as the footing of the decision in Greene v. Tyler & Co., namely, the giving and receiving of usury is a fraud upon subsequent lien creditors, said taking being unlawful. As recent as Duquesne Bank's Appeal, 24 P. F. Smith 426, the plaintiff in a judgment was enjoined from collecting any part thereof, until he entered credit for the amount of usury therein, this court saying: "The defence is one under a statute which lays its hands upon the usury as an illegal act; contrary therefore to equity also; and it becomes the duty of all courts to maintain the law." Still later decisions, however, have settled "that the mere fact that a debtor has paid or agreed to pay in good faith. and in the usual course of business, more than six per cent. interest, is not enough to establish a fraud upon creditors, and that the mere refusal of a debtor to contest the claim against him does not of itself amount to such fraud; and that it is only when an usurious contract is entered into collusively as a scheme to hinder and delay creditors, that the latter have any standing to contest a judgment entered upon such usurious contract:" Wheelock v. Wood, ante, p. 298. Referring to Greene v. Tyler & Co. and Bachdell's Appeal, the court say: "At that time the taking of more than six per cent. interest was unlawful, and subjected the lender to a penalty. It is not so now. The Act of 28th May 1858 has made a radical change in this respect." "It is not, therefore, now unlawful for a debtor to pay and a creditor to receive more than six per cent." "A man who has, in good faith, contracted to pay more than six per cent., has committed no violation of any law, and is not bound to repudiate his contract:" Appeal of Second Nat. Bank of Titusville, 4 Norris 528; see Miners' Bank v. Roseberry, 31 P. F. Smith 309.

An auditor appointed to distribute moneys cannot inquire into a judgment rendered in court, but must take it as conclusive: Dyott's Appeal, 2 W. & S. 557. This has been the unbending rule in all judgments wherein there was no fraudulent collusion against creditors. There is no difference in legal effect between a judgment confessed, or for want of appearance or plea, and a judgment on the verdict of a jury. One is as conclusive as the other until reversed or set aside. A judgment by collusion between the parties to it, for the purpose of defrauding creditors, may be attacked collaterally by the creditors intended to be defrauded, whether the judgment was by confession, or in default, or on a verdict. Creditors may show it is a nullity as to themselves: Clark v. Douglass, 12 P. F. Smith 408; Thompson's Appeal, 7 Id. 175.

[Lennig's Appeal.]

A judgment on a mortgage is a conclusive adjudication of the amount due from the mortgagor to the mortgagee, at the time of its rendition: Carlisle *v.* Bindley, 10 Norris 229. A subsequent mortgage or other lien creditor is bound by it till he shows fraud against himself. By reason of the change in the law respecting usury, Greene *v.* Tyler & Co. is not applicable to the case in hand; and we but follow the decisions directly in point in ruling that the admitted facts do not entitle the building association to the money.

Decree reversed, and now it is considered and decreed that the money in dispute, $280, be appropriated to the judgment of Lennig et al. The appellees to pay the costs of this appeal and costs below which accrued subsequent to July 7th 1879.