## Sanner et al. *v.* Unique Lodge No. 3, Knights of Pythias of Rockwood.

640

Argued April 26, 1943. Before KELLER, P. J., BALD-
RIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and
RENO, JJ.

*Clarence L. Shaver,* of *Shaver & Heckman,* for appel-
lant.

*Charles F. Uhl,* with him *Charles H. Ealy* and *Simon
K. Uhl,* of *Uhl, Ealy & Uhl,* for appellees.

OPINION BY BALDRIGE, J., July 16, 1943:

This appeal is from the order of the court below dis-
missing exceptions to the report of an auditor appointed
to distribute the fund in the hands of the sheriff arising
from the sale of real estate of Unique Lodge No. 3,
Knights of Pythias of Rockwood, Pennsylvania.

The salient undisputed facts found by the auditor
may be stated as follows. Mary Leighty on November
20, 1924, entered a judgment note against the defendant
lodge in the sum of $6,000. In December of 1928 the
executors of Mary Leighty assigned a portion of the
balance then due on the judgment as follows: $2,600 to
S. H. Shelley, the appellant, and R. S. Shelley, and
$2,000 to Albert Sanner and Adelaide Sanner, appellees;
each assignment was without priority over the other.
A scire facias to revive and continue the lien of the

original judgment entered to No. 352, December Term, 1924 was issued November 16, 1929 to No. 306 December Term, 1929, and duly served. Judgment was taken on this scire facias on November 13, 1934, for want of an affidavit of defense in favor of the Sanners only for $2,710. On November 1, 1939, the Sanners caused a scire facias to be issued, No. 134 December Term, 1939, to revive and continue the lien of their judgment. On March 31, 1941, judgment was entered for want of an affidavit of defense in their favor for $3,774.79. An alias scire facias was issued on August 20, 1936, No. 306 December Term, 1929, to revive the lien of the judgment originally entered to No. 352 December Term, 1924, as to S. H. Shelley and R. S. Shelley. This writ was duly served, but never reduced to judgment.

In the meantime, on August 20, 1934, defendant's real estate was sold by the county treasurer for unpaid taxes to M. Elizabeth Dull for $645.79. On August 18, 1936, (two days before the date the Shelleys caused to be issued an alias scire facias to revive the original judgment) the appellant, a member of the defendant lodge, paid the county treasurer $742.66, the sum necessary to redeem the real estate and received a receipt reading: "Received from Unique Lodge No. 3, K. of P. Lodge Trustees (S. H. Shelley) Owner . . . . . . Redemption money on sale . . . . . . one lot, one lot No. 75 . . . . . . Rockwood Boro." At the same time the appellant paid $229.15 covering additional unpaid taxes on the same property for the years 1932-1935, and received a receipt: "Payment made by S. H. Shelley."

On the same day those payments were made the appellant filed in the office of the prothonotary, No. 505 September Term, 1936, these two receipts and directed the prothonotary to enter judgment against the lodge and in his favor "as a party in interest" for $971.81.

The appellees, in addition to their original judgment obtained by assignment from Mary Leighty's executors,

had another judgment entered to No. 286 September Term, 1925, against the defendant lodge for $2,000. It was last revived on March 31, 1941, when it amounted to $4,607.82. A writ of fieri facias was issued on this judgment and the property of defendant was sold on May 2, 1941 by the sheriff to appellees for $2,900.

The auditor appointed to distribute the funds in the sheriff's hands, after applying the amount necessary to pay the taxes, expenses of sale and audit, awarded the balance of $1,741.54 to appellees on account of their judgment at No. 134, December Term, 1939, a revival of their part of the original Leighty judgment. The auditor held that the appellant's judgment entered on the tax redemption claims was not a valid lien upon the real estate sold by the sheriff because he was neither "the owner of the real estate sold, a lien creditor, or a person having an interest in the real estate, at the time of the payment of the redemption money to the County Treasurer," within the meaning of the Act of 1931, May 29, P. L. 280, §9, as amended 72 PS §5971 (i). The court below dismissed appellant's exceptions to the auditor's report.

The pertinent portions of section 9 of the Act of 1931, supra, are as follows: "Any real estate sold under this act may be redeemed by the owner, his heirs or legal representatives, or by any lien creditor, or his heirs, assigns or legal representatives, or by anyone interested in said real estate for the benefit of the owner thereof, at any time within two years after such sale, by the payment to the county treasurers of the full amount which the purchaser paid to said treasurer for taxes, interest, and costs and fifteen per centum of the amount of tax in addition thereto ......

"When any real estate is so sold, no lien whatsoever against such real estate shall be deemed to be discharged during the period for redemption; but if such real estate is not redeemed, then all liens against the

same, except such liens as are hereinbefore specifically saved, shall be deemed to be discharged from the date that the right of redemption expired.

"When any real estate is so redeemed by a lien creditor, or his heirs, assigns or legal representatives, or by any person interested for the benefit of the owner, the county treasurer shall issue to the person redeeming such real estate a certificate, stating the fact of such redemption, a brief description of the real estate redeemed, and the amount of the redemption money paid, which certificate may be entered in the office of the prothonotary of the county as a judgment against the owner of the real estate for the amount stated therein. The lien of any such judgment shall have priority over all other liens against such real estate except such liens as would not have been discharged had no redemption been made."

Appellant was a lien creditor as to this lot on August 20, 1934, the date of the treasurer's sale but not on August 18, 1935, when he paid the redemption money as his lien expired on November 16, 1934, for want of prosecution. The argument is advanced that appellant remained a "lien" creditor; that between himself and defendant, his right to sell the real estate in defendant's hands was not limited to five years, but continued indefinitely. He was a creditor of the lodge but he was not a "lien" creditor within the meaning of the Act of 1931, supra, as against these appellees who kept the lien of their judgment alive when the money was paid to the county treasurer.

The appellant earnestly insists also that he is within the terms of section 9 of the Act of 1931, supra, giving the right to redeem to "any person interested for the benefit of the owner." The privilege of redemption under various acts of assembly regulating tax sales has always been liberally construed: *Philadelphia v. Schaefer et al.,* 269 Pa. 550, 552, and cases cited page 553, 112 A. 864.

The right of redemption of land sold for taxes was originally limited to the owner: Act of March 13, 1815, P. L. 177, 6 Sm. L. 299, §4, 72 PS §6091; *M'Bride v. Hoey*, 2 Watts 436. Later, in *Patterson v. Brindle*, 9 Watts 98, the court held, page 101: "The right to redeem should not be narrowed down by a strict construction. Any right which, in law or equity, amounts to an ownership in the land, ...... which can be deemed an estate in it, makes the party an owner, so far as it is necessary to give him the right to redeem." The Act of April 14, 1840, P. L. 349, 352, §6, 72 PS §§5895, 6095, provided lands sold for taxes might be redeemed by any person having a "lien, or other equitable interest, ...... his heirs, assigns, or other legal representatives." The Act of May 9, 1929, P. L. 1684 (expressly repealed by the Act of 1931, supra) provided in §13 that "the right of redemption shall remain in the real owner of such lands, or other persons interested ......"

The plain purpose of the Act of 1931, supra, limiting the right of redemption of land sold for taxes to the owner, lien creditor, or anyone interested in the land for the benefit of the owner, is the same as under the former acts, viz, to protect the purchaser at the tax sale against redemption by a stranger: *M'Bride v. Hoey*, supra, p. 441. "The right to redeem was given exclusively to the owner of the land when it was sold, to guard the purchaser from the officiousness of strangers; ......" *Orr v. Cunningham*, 4 W. & S. 294, 298. Admittedly, the appellant was not an owner of the land, nor, as above stated, was he a lien creditor. Was he one who had an interest in the land for the benefit of the owner? As a creditor his interest was rather adverse to the lodge. His membership in the lodge did not give him such an interest. The money received by the county treasurer to redeem the property, as shown on the face of the receipt, was from the lodge. Shelley held no authorization or assignment from it at the time

of redemption. He did not purport to act as agent for the owner as in *Irwin p. Trego*, 22 Pa. 368, reaffirmed in *Huzzard et al. v. Trego et ux.*, 35 Pa. 9. The burden rested on the appellant to bring himself within the terms of the act to establish his right to reclaim this lot in order to give his claim priority over appellees' revived judgment. This he failed to do.

The appellant argues that even if it be correct that he was a mere stranger and voluntarily redeemed the real estate of the lodge, he was entitled to be subrogated to the rights of the county treasurer and given priority to the Sanners' judgment to the extent of the redemption money. In support of this contention our attention is called to Restatement, Restitution, §162, Comment (f) which provides: "Thus, if by statute a tax imposes a personal liability upon the taxpayer and the taxing authority is entitled to a preference over other creditors of the taxpayer, a person who by mistake pays, the tax is entitled to be subrogated to the position of the taxing authority and thereby to obtain priority over other creditors of the taxpayer." The Act of 1931, supra, specifically names those entitled to redeem property sold at treasurer's sale and regulates their rights. No person not mentioned, although he may have paid the taxes, has a standing to obtain relief. There was no proof that the appellant paid the treasurer under a mistake of fact. If any mistake was made it was purely of law. The courts generally will not relieve one from the consequences of such a mistake: *Clapp et al. v. Hoffman*, 159 Pa. 531, 28 A. 362; *Clark v. Lehigh & Wilkes-Barre Coal Company*, 250 Pa. 304, 95 A. 462. We are aware that where there is a mutual mistake and a gross injury and great hardship results, an exception to the general rule governing mistakes at law may be made: *Price v. Shultz*, 85 Pa. Superior Ct. 78, 82. Here there was no mutual mistake. The appellant, a creditor, who had lost his lien, was evidently endeavoring, when

he attempted to redeem the property, to obtain an advantage over the Sanners.

Furthermore, under §162, supra, Comment (b), it is provided: "Where a person discharges an obligation owed by another, or a lien upon the property of another, and does so officiously, he is not entitled to reimbursement from the other (see §2), and is not entitled to be subrogated to the position of the obligee or lien-holder." "Officiousness" has been defined under §2 as "interference in the affairs of others not justified by the circumstances under which the interference takes place." Shelley, who had no authority from the owner to redeem the land, in attempting to do so was acting officiously and did not acquire any right of subrogation.

Part of §9, of the Act of 1931, supra, provides that "when any real estate is so sold [for taxes], no lien whatsoever against such real estate shall be deemed to be discharged during the period for redemption ......" That does not relieve one of the necessity of reviving a lien properly every five years under the provisions of the Act of June 1, 1887, P. L. 289, 12 PS §868. The Act of 1931, supra, certainly did not extend the five year revival period or hold the necessity for revival in suspense until the end of the two year redemption period. No such result is necessary or was ever intended.

Finally, appellant contends the auditor could not in these proceedings question the validity of his judgment based on the two receipts received from the county treasurer, and entered to No. 505 September Term, 1936 under the authority of the Act of 1931, supra. He relies upon cases holding that an auditor appointed in proceedings for the distribution of the proceeds of an execution may not inquire into the merits or validity of a judgment, such as *Lennig's Appeal*, 93 Pa. 301, 307; *Appeal of Second Natl. Bank of Titusville*, 96 Pa. 460. In our opinion this rule does not apply here. An

auditor appointed to distribute the proceeds of a sale of real estate on execution has authority to pass upon the priority of liens of the various judgments presented: 7 Standard Penna. Practice, p. 408, §390. Here all the facts were before the auditor. He had the right to determine the status of appellant's judgment entered on the tax redemption claim and in our opinion, correctly held that it was not a valid lien upon the real estate from which the fund for distribution was realized.

The judgment and order of the court below are affirmed.