Philadelphia *v.* Miller et al., Appellants.

Argued October 3, 1956. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and CARR, JJ.

*Herbert M. Linsenberg*, with him *Jerome L. Markovitz*, for appellants.

*Levy Anderson*, First Deputy City Solicitor, with him *David Berger*, City Solicitor, for appellee.

OPINION BY ERVIN, J., November 13, 1956:

This is an appeal by Alfred Miller and Benjamin Drob from an order of Court of Common Pleas No. 3 of Philadelphia County discharging a rule to show cause why a judgment for city real estate taxes should not be opened.

The matter was disposed of by the lower court on petition, answer and reply. The facts, which were not in dispute, may be summarized as follows: On February 4, 1952 the sheriff sold premises 4108 Pearce Street, Philadelphia, at a second sale for 1947 taxes for the sum of $300.00. The property had previously been listed for sale on June 4, 1951 but the sale was postponed because the upset price of $1,960.00 had not been bid. The judgment on which it was sold had been entered against Joseph L. Dear and John A. Dear, the registered owners of the property since 1923. On March 17, 1951 the Dears conveyed the property to one Charles Bliss, who conveyed it to Alfred Miller, one of the appellants herein, on October 5, 1951. Pursuant to the second sale, the sheriff acknowledged a deed to the purchaser, the Kirshbaum Investment Corporation, on February 25, 1952. On July 17, 1952 Miller filed a petition to redeem the premises pursuant to §32 of the Act of May 16, 1923, P. L. 207, 53 PS §2052. Before an order granting Miller's right of redemption was entered, Kirshbaum Investment Corporation conveyed the premises to Miller by deed dated January 22, 1953. On January 23, 1953 Miller conveyed the premises to Drob, the other appellant herein. Thereafter, it having come to the attention of the city that the property had been conveyed by the purchaser at the sheriff's sale to the owner at the time of the sale, the city reasserted its claim for 1949 taxes in the amount of $32.25, which had not been paid out of the proceeds of the sale. On

July 22, 1953 the city issued a writ of sci fa and on September 8, 1953 entered judgment against Miller and the Kirshbaum Investment Corporation.

The property was again listed for sheriff's sale on the first Monday of October, 1953. On October 2 Drob filed a petition to stay the sale and asked leave to intervene and open the judgment. The city filed an answer to the petition and the appellant filed a reply to new matter. On January 3, 1956 the lower court discharged the rule to open the judgment and this appeal followed.

The appellants petitioned this Court to remand the record for the taking of testimony. The appellants' position now is "that the property was not redeemed, either in fact or as a matter of law, but that Miller merely took title to the property as a bona fide purchaser for value within the redemption period, and therefore that the legal consequences which flow from the exercise of the owner's equity of redemption are not applicable in this case." The city filed an answer to the petition for remand in which it set forth the appellants' admissions of the redemption in the pleadings. No less than five times Benjamin Drob, the real party in interest, averred and admitted that Alfred Miller, the registered owner of the premises at the time of the sale, redeemed the property upon payment of the redemption price, in accordance with the act of assembly in such case so made and provided. The lower court decided this matter in reliance upon Drob's sworn admissions of a redemption. We will not permit the appellants at this late date to endeavor to change the basic fact upon which the lower court decided this matter. Our Supreme Court, in *Coxe v. Sartwell*, 21 Pa. 480, 486, 487, passed upon a similar situation with the following comment: "Was it a purchase of a legal title under a

sale for taxes, or a redemption, within the two years allowed for the purpose, which invalidated that title? The assignment from Oviatt to Cowley was made before Oviatt's title had become perfect by the expiration of the time allowed for redemption. The consideration paid to Oviatt was precisely the sum required by law for the purpose of redemption—the sum which Oviatt was bound to receive if tendered to the treasurer by the owner. The money was paid and received under a claim of Brewster Freeman's right to redeem . . . . If Cowley or Sartwell intended to acquire title under the treasurer's sale, they should have given the transaction the *form of a purchase,* by waiting until Oviatt's title became perfect and then dealing with him on the footing of one who had a title. By giving the transaction that form, two parties would be constituted as a necessary element in the contract. Oviatt, as one of them, would have had the right to sell or retain the land at his pleasure, and, in case of a sale, to fix upon his own terms. He might have demanded something approximating to the value of the land. These were disadvantages which it was not the pleasure of Mr. Freeman to encounter, and therefore he dealt with Oviatt as one who had none of the rights of an owner—who had no claim upon the land further than as a security for the amount of his bid and the percentage allowed by law, and whose imperfect title it was in the power of Mr. Freeman to invalidate at any moment within the two years, by a tender of that sum to the treasurer. Oviatt, therefore, instead of selling his title under the treasurer's sale, yielded to the necessity of the case, and at Mr. Freeman's request consented to an act which totally avoided it: Orr v. Cunningham, 4 W. & Ser. 294."

The petition to remand will be refused.

Where real estate is sold for delinquent taxes free and clear of all liens and encumbrances under §31 of the Act of May 16, 1923, P. L. 207, 53 PS §2051, and is thereafter redeemed under §32 of said act, does the lien of unpaid taxes continue against the property? We are assuming, as we must on this present record, that the property was redeemed within one year from the date of the acknowledgment of the sheriff's deed by the person who was the registered owner at the time of the sale.

The text writers, as far as we have been able to ascertain, state that the effect of redemption is to place all parties in the position they occupied before the sale. It therefore follows that if the title to the land before sale was embarrassed with liens and encumbrances such as would be divested by the maturing of the tax title, this will be restored by the redemption. Whitworth on Tax Sales and Titles, §143, p. 130.

Professor Cooley, in his excellent work, The Law of Taxation, Vol. 4, 4th ed., §1577, says: "Redemption gives no new title; it simply relieves the land from the sale which had been made."

L. S. Hecht, at pages 60, 61 in the 1954 supplement to his work on Law of Municipal Claims and Tax Liens Against Real Estate in Pennsylvania, after citing numerous Pennsylvania cases under prior acts, says: "None of the above cases involved the situation of a sheriff's sale of real estate free and discharged of all tax and municipal claims, liens, mortgages, charges and estates, pursuant to a decree of court, as provided in Section 31 of the Act . . . . [with which we are here concerned] However, the reasoning of the courts in all of these cases is such that we believe the same result would be reached if applied to redemption from sales of the character just mentioned, which, of course, are, under

the express provision of Section 31, subject to the right of redemption."[1]

Many years ago, in a per curiam opinion, our Supreme Court said: "The liens against the property of Negley were not devested by the tax sale. The purchaser at that sale acquired but an inchoate title, and it could not affect the title of Negley or devest the liens against the land owned by him until after the time limited by the act for redemption had passed. But before that time Negley redeemed; hence, neither his own status nor that of his creditors was in the slightest degree affected by the tax sale." *Appeal of Singer,* 4 Sadler 430, 433. See also *Yocum v. Zahner,* 162 Pa. 468, 475, 29 A. 778.

Without deviation our courts have followed this course. In 1944 Mr. Justice LINN said, in interpreting the meaning of the Act of May 29, 1931, P. L. 280, §9, as amended, 72 PS §5971(i), regulating the right to redeem land sold for taxes: "By her purchase from the treasurer, M. Elizabeth Dull obtained an inchoate title that would become absolute if the land were not redeemed in two years." *Sanner v. Knights of Pythias,* 349 Pa. 523, 525, 37 A. 2d 576, affirming the same case in the Superior Court reported at 152 Pa. Superior Ct. 639, 33 A. 2d 518.

In interpreting the 11th section of the Act of May 13, 1856, P. L. 567, our Supreme Court arrived at a similar result. See *Gault's Appeal,* 33 Pa. 94.

In *Shalemiller v. McCarty,* 55 Pa. 186, 188, the Supreme Court said: "The uniform understanding and belief of the profession and people of this Commonwealth, for over half a century, has been, that a purchaser of unseated lands for taxes, when he receives his deed,

---

[1] To the same effect see Hall, Pa. Searches and Titles, §139, p. 86; Patton on Titles, §271, p. 859; 51 Am. Jur. Taxation, §1104, p. 958; Black on Tax Titles, 2nd. ed., §377, p. 468.

takes but an inchoate or inceptive title, which requires the lapse of two years from the date of sale to ripen into an absolute title. This it will do if the land be not redeemed in the meantime." See also *Woodland Oil Co. v. Shoup*, 107 Pa. 293.

In *Phila. v. Schaefer*, 269 Pa. 550, 553, 112 A. 864, the Court said: "The respondent here would distinguish the rules established in the cases dealing with tax sales of unseated lands in that the redemption, under such circumstances, merely annulled the transaction leaving the title precisely as though the sale had not been made (Yocum v. Zahner, 162 Pa. 468) ; whereas in sales such as provided for by the Act of 1901, a deed is made by the sheriff to the purchaser, who in case of redemption conveys directly to the one making the payment; the effect of which, respondent contends, is not to set aside the tax sale, but to ratify and confirm the same, and establish title through the sheriff's vendee. The mere fact that such procedure has been provided for does not change the character of the transaction. This is made clear by an examination of Gault's Appeal, supra, where the grantee was held to have the right to redeem, the title involved being controlled by the Act of May 13, 1856, P. L. 567, section 11, which provided, as does the Act of 1901, for sale and reconveyance by the purchaser to the owner. . . ." See also *Phila. v. Unknown*, 30 Pa. Superior Ct. 516, and *Collins v. Wilkinson*, 366 Pa. 108, 76 A. 2d 649.

A similar position has been taken by some of our lower courts under the Act of May 29, 1931, P. L. 280, as amended, 72 PS §5971(a) et seq., see *Knupp v. Knupp*, 54 D. & C. 230, and *Olshefskie v. Budock*, 41 D. & C. 373; and under the Act of June 4, 1901, P. L. 364, see *City of Phila. v. Woodside*, 10 D. & C. 565; and under the Act of May 16, 1923, P. L. 207, see *Easton v. Sulkin*, 19 D. & C. 152.

Appellants cite the case of *French v. Toman,* 375 Ill. 389, 31 N.E. 2d 801, in support of their contention that where a property is redeemed by a person not personally liable for payment of the taxes, then the unpaid taxes do not remain as a lien against the property. We do not agree with the reasoning of this opinion. It is contrary to the position taken by the Pennsylvania courts for many years. The mere fact that the registered owner at the time of the tax sale was not personally liable for the tax because he was not the owner at the time the tax was levied, is not controlling. The act expressly gives to the registered owner at the time of the sale the right to redeem, irrespective of whether he was the owner at the time when the tax was levied. It is apparent that the legislature intended to protect the person who was the owner at the time of the tax sale rather than the person who was the owner when the tax was levied. This concern of the legislature for the owner at the time of the sale is understandable when we consider that such owner, upon purchase of the premises, took them subject to whatever taxes had been levied prior thereto and presumably was granted a reduction in the purchase price for any such tax encumbrances. Having been granted this credit, he should not complain if he is obliged to pay the tax after redemption. The same reasoning would apply to a grantee of an owner who had redeemed. If the appellants' position were sustained, the statute would become a convenient vehicle for avoiding the payment of delinquent taxes. On a sale free and clear the delinquent owner could have a nominee purchase the property and then such owner would be able to redeem free and clear of all tax claims merely by paying the amount set forth in the statute. In the present case the owner would be relieved of paying the sum of approximately $1,-960.00 by the payment of approximately $300.00. Ob-

viously this is not and cannot be the intent of the statute.

The petition to remand is dismissed and the decree of the lower court is affirmed.